IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 11, 2021 Session

## STATE OF TENNESSEE v. ERIK SEAN POTTS

**Appeal from the Circuit Court for Maury County**
No. 28251     Stella L. Hargrove, Judge

_____

### No. M2020-01489-CCA-R3-CD

_____

The Defendant-Appellant, Erik Sean Potts, entered a guilty plea to driving under the influence ("DUI") by impairment (second offense) in exchange for dismissal of four other charges stemming from his DUI offense and a sentence of eleven months and twenty-nine days to be served on supervised probation after service of forty-five days of confinement. The Defendant reserved a certified question of law challenging the denial of his motion to suppress, which was based upon an unconstitutional search and seizure. After thorough review, we conclude that the certified question does not meet the requirements of Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure and State v. Preston, 759 S.W.2d 647 (Tenn. 1988), and, as a result, this court is without jurisdiction to consider the appeal. Accordingly, the appeal is dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J. ROSS DYER, JJ., joined.

Jacob J. Hubbell, Columbia, Tennessee, for the Defendant-Appellant, Erik Sean Potts.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Victoria Haywood, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On June 11, 2020, the Defendant was indicted by the Maury County Grand Jury for one count each of DUI by impairment (second offense), DUI per se (second offense), unlawful possession of a firearm while impaired, unlawful possession of an open container,

and refusal to submit to a blood draw. On July 2, 2020, the Defendant filed a motion to suppress "any and all" of the State's evidence against him, alleging that "the search and/or seizure of the Defendant" was "conducted as the result of an invalid stop and without an arrest or search warrant[,]" violating the United States Constitution and Article I, Section 7 of the Tennessee Constitution. A hearing on the motion was conducted on August 4, 2020.

**Motion to Suppress Hearing**. At the hearing on the motion to suppress, Columbia Police Department ("CPD") Sergeant Billy Camargo testified that on August 17, 2019, he was outside a McDonald's restaurant "backing up other officers" who were conducting an unrelated traffic stop when he was informed by a McDonald's staff member that a man was asleep in his pickup truck in the restaurant's drive-through line. Sergeant Camargo explained that he made "two contacts" with the Defendant. During the first contact, Sergeant Camargo approached the Defendant's white pick-up truck from the passenger side and asked the Defendant once he picked up his food if "he could proceed forward towards the parking stall away from the window so [he] could talk to him." Although Sergeant Camargo did not "make any observations as to his appearance or any smell or anything" during the first contact, he explained that the Defendant was in a large pick-up truck, and he "really couldn't see [the Defendant] at all" due to Sergeant Camargo's height and could only "hear him[.]" Sergeant Camargo informed his lieutenant that the Defendant "seemed okay" from what he had observed, and his lieutenant asked him to "check on [the Defendant] again."

Sergeant Camargo testified that the second contact occurred when he asked the Defendant "to step out of his vehicle so [he] could check on him because [he] informed [the Defendant] the reports were that he was asleep at the wheel. And he had told [Sergeant Camargo] he was okay." Sergeant Camargo testified that he was "first and foremost concerned for [the Defendant's] wellbeing." When the Defendant stepped out of his truck, Sergeant Camargo observed that the Defendant was "a little unsteady on his feet," and "there was a bit of an odor of alcohol[.]" Sergeant Camargo was unsure whether the odor "was going from the vehicle or [the Defendant,]" so he "started [his] initial field sobriety [test] at that point to make sure [the Defendant] was okay to drive."

Sergeant Camargo testified that he had worked for the CPD for fifteen years and had academy training and yearly in-service training on DUIs. He stated that he had conducted "hundreds" of DUI stops and field sobriety tests. Based on his training and experience, Sergeant Camargo explained that "when there is a report of someone asleep in a drive-[through]," his "first suspicion is the DUI, secondary would be maybe a medical issue at that point, but usually it's DUI." Sergeant Camargo testified that he first made contact with the Defendant at 1:48 a.m., and the Defendant never exhibited any signs of a medical issue or claimed to have a medical issue.

On cross-examination, Sergeant Camargo testified that he thought his contact with the Defendant was recorded on his lieutenant's and another officer's body cameras. He explained that his body camera was not operational on the night in question because the battery was dead. Sergeant Camargo testified that his lieutenant informed him of the McDonald's employee's complaint, and he searched for a white pick-up truck based on that information. He stated that it was hard to see into the vehicles because it was dark outside, but the Defendant was not asleep from what Sergeant Camargo could see when he first approached his vehicle. Sergeant Camargo agreed that during his first contact with the Defendant, he did not notice any indicators of inebriation or a medical condition, but he reiterated that he could not see the Defendant well from his angle outside the pick-up truck. The Defendant told Sergeant Camargo through the window that he was "okay." Sergeant Camargo remembered "asking [the Defendant] if he would mind stopping, once he got his food, so [Sergeant Camargo] could talk to him further." Sergeant Camargo did not observe "a big gap" of cars in front of the Defendant to indicate that he was "holding up" the drive-through line. Sergeant Camargo then left the Defendant's vehicle and informed his lieutenant that the Defendant "looked fine" from "what [he] could tell." His lieutenant then instructed Sergeant Camargo to "check out" the Defendant further. Sergeant Camargo then went back to the Defendant's truck, which had pulled around the building. Sergeant Camargo did not believe it was unsafe for the Defendant to drive "at that point." Sergeant Camargo reiterated that he did not notice any signs of impairment or inebriation until the Defendant parked his pick-up truck and exited the vehicle. He agreed that he was "trained on what to look for when [he] initially approach[ed] a vehicle" during a DUI stop.

Lieutenant Tony Gray's body camera footage was played for the court. In the video, Sergeant Camargo stated that the Defendant's eyes "didn't look bloodshot or watery" from where he stood, and the Defendant "looked fine to [him]."

On redirect examination, Sergeant Camargo testified that his first encounter with the Defendant lasted "no more than a minute[,]" and there was not lighting in the Defendant's truck. He agreed that a police vehicle never pulled behind the Defendant "with blue lights, [or] anything of that nature[.]" Sergeant Camargo testified if the Defendant had said, "[N]o, I'm going home," when Sergeant Camargo asked him to pull into a parking spot so that they could talk, he would have let him. He further testified that the Defendant was no longer "free to go" when Sergeant Camargo smelled alcohol on him.

On recross-examination, Sergeant Camargo testified that there were "approximately four" officers in the McDonald's parking lot with their police vehicles at the time he approached the Defendant. A fifth officer later arrived at the parking lot. Sergeant Camargo reiterated that he would not have stopped the Defendant if he had declined to pull forward to talk to him, explaining that "at that point, it's a welfare check, which we do very

frequently on calls that we receive on motorists either asleep or ill, whatever." He further explained that if "we don't observe any initial thing at first, it's usually voluntary, we'll ask them if we can talk to them[,] and we'll ask them if they can pull aside." Sergeant Camargo testified that after his initial encounter with the Defendant, he had "reasonable suspicion for an investigation but not reasonable suspicion for DUI at that point[.]"

CPD Lieutenant Tony Gray testified that he had initially instructed Sergeant Camargo "to check on the subject that was in the drive-[through]" after being told that someone was asleep in the vehicle. Lieutenant Gray did not observe anything "improper" about the Defendant or his vehicle. He agreed that Sergeant Camargo's initial contact with the Defendant was based on a "[w]elfare [check], [c]community caretaking function[.]" He explained that during the initial encounter, Sergeant Camargo had only stood "at the vehicle at a little bit of a distance[,]" and Lieutenant Gray therefore "didn't feel like [Sergeant Camargo] had done a good enough job" to "ensure that this person was . . . safe or okay inside the vehicle." Lieutenant Gray accordingly instructed Sergeant Camargo to "make sure [the Defendant] was okay when he pull[ed] out of the drive-[through] at the end." Lieutenant Gray then left the scene. Lieutenant Gray testified that he had worked for the CPD for fifteen years and was the highest-ranking officer at the scene. He stated that if the Defendant had driven off instead of pulling forward to speak with Sergeant Camargo, officers "would have probably observed his driving to make sure everything was okay[,]" and he "d[id]n't know if [they] would have stopped him or not." He agreed that there was no reasonable suspicion to stop the Defendant for a DUI after Sergeant Camargo's initial encounter with him. He affirmed that he and the other officers were in the McDonald's parking lot conducting an unrelated stop.

After considering counsels' arguments, the trial court denied the motion to suppress. The trial court found:

> This encounter started out in two ways, in the Court's mind, a welfare check based upon what the employee had observed, the employee of McDonald's there, and also started out, in this Court's mind, as a community caretaking function.
>
> And I will say on the front end, I am going to call it a cursory encounter by Sergeant Camargo with [the Defendant], [the Defendant] did consent to pull around. And so in this Court's mind, Sergeant Camargo had -- could go further with his investigation after that cursory encounter and check out [the Defendant] to make sure that not only he was safe, but that the public safety was not in danger.

- 4 -

And so once the odor of alcohol is out there, you know, certainly we have reasonable suspicion and that amounts to probable cause in dealing with [the Defendant].

On October 7, 2020, the Defendant entered a guilty plea to one count of DUI by impairment (second offense) in exchange for the State's dismissing his remaining charges and a sentence of eleven months and twenty-nine days to be served on supervised probation after service of forty-five days of confinement. The Defendant also reserved the right to appeal a certified question of law, which stated in its entirety,

Whether the search and seizure of the Defendant and his vehicle was valid under the 4th Amendment to the United States Constitution and Section 7 of Article I of the Constitution of Tennessee when the officer approached the defendant's vehicle based on a report of a driver asleep at a drive through line. [T]he defendant was not asleep when the officer approached his vehicle and the officer saw no signs of impairment or medical distress. [B]ut the Officer subsequently approached the defendant's vehicle a second time and directed him to exit the vehicle for the purpose of conducting field sobriety tests.

The same day, the trial court entered an "order certifying question for appeal," which included the above-stated question. In the order, the trial court explained that the encounter with the Defendant "started as a community caretaking function, and [] the officer subsequently developed reasonable suspicion and probable cause for [DUI]." The order also noted that the Defendant "conceded at the suppression hearing that the initial encounter was a valid community caretaking function[,]" but the Defendant argued that the function "ceased before the officer's second approach to the vehicle and that the second approach was not justified under the community caretaking exception[,] nor was the second approach supported by reasonable suspicion or probable cause." The order also stated that the question was reserved with the consent of the trial court and the district attorney and that the district attorney, the trial court, and the Defendant were "all of the opinion that the certified question reserved herein is dispositive of the case." The Defendant filed a timely notice of appeal on November 2, 2020.

## ANALYSIS

The Defendant argues on appeal that the trial court erred in finding that the Defendant's second encounter with Sergeant Camargo was voluntary and in finding that Sergeant Camargo had reasonable suspicion and probable cause to "get the [Defendant] out of the truck." The State reasons that the appeal should be dismissed because the Defendant's certified question of law is not dispositive of the case. After reviewing the

record, we agree with the State. We further conclude that the certified question is overly broad.

A defendant must properly reserve a certified question before this court has jurisdiction to consider the merits of the question. Tennessee Rule of Criminal Procedure 37(b)(2)(A) allows for an appeal from any order or judgment on a conditional plea of guilty or nolo contendere if the defendant reserves, with the consent of the State and the court, the right to appeal a certified question of law that is dispositive of the case, so long as the following four requirements are met:

> (i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;

> (ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;

> (iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

> (iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv).

The Tennessee Supreme Court clearly outlined the requirements for reserving a certified question of law in State v. Preston:

> Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a [Tennessee Rule of Appellate Procedure] 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate

courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case. Most of the reported and unreported cases seeking the limited appellate review pursuant to [Tennessee Rule of Criminal Procedure] 37 have been dismissed because the certified question was not dispositive. Also, the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. Of course, the burden is on defendant to see that these prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified. No issue beyond the scope of the certified question will be considered.

759 S.W.2d 647, 650 (Tenn. 1988).

Additionally, if the judgment does not set out the certified question, the judgment may incorporate by reference or refer to another document that does satisfy Preston's requirements. See State v. Irwin, 962 S.W.2d 477, 479 (Tenn. 1998). These requirements are mandatory in order to confer jurisdiction on an appellate court following the entry of a guilty plea. State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996); see also State v. Armstrong, 126 S.W.3d 908, 912 (Tenn. 2003) (rejecting "substantial compliance" with the Preston requirements). The burden of properly "reserving, articulating, and identifying the issue" reserved for appellate review rests solely on the defendant. Pendergrass, 937 S.W.2d at 838.

It is undisputed that the order certifying the Defendant's question, which was incorporated by reference in his judgment form, clearly stated that the question was reserved as a part of his plea agreement with consent from the State and the trial court and that the trial court, the State, and the Defendant all agreed that the question was dispositive of the case. However, after thorough review of the record, we are unable to conclude that the certified question of law clearly identifies "the scope and legal limits of the legal issue reserved" and is actually dispositive of the case. See Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv).

First, we conclude that the certified question of law is not dispositive of the Defendant's DUI conviction. Generally, a "question is dispositive when the appellate court must either affirm the judgment [of conviction] or reverse and dismiss [the charges]." State v. Dailey, 235 S.W.3d 131, 134 (Tenn. 2007) (internal quotations and citations omitted).

A question is never dispositive "when we might reverse and remand[.]" State v. Wilkes, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). "If the appellate court does not agree that the certified question is dispositive, appellate review should be denied." Preston, 759 S.W.2d at 651. In the instant case, the certified question of law does not challenge or even address the trial court's finding that the Defendant's interactions with Sergeant Camargo were consensual until "the odor of alcohol [wa]s out there." Because appellate review of whether the Defendant was seized at the time of Sergeant Camargo's "second contact" with the Defendant is not embodied within the certified question, it is not dispositive of the case. Based on the question as presented, this court could conclude that Sergeant Camargo's "second contact" with the Defendant was completely consensual, regardless of any conclusions we may draw regarding the existence of reasonable suspicion or a valid community caretaking function. Accordingly, the question is not actually dipositive of the case, regardless of the parties' opinion that it was.[1]

Second, the certified question is overly broad because it is not clearly stated as to identify the scope and limits of the legal issue reserved. The Defendant bears the burden of "reserving, articulating, and identifying the issue." Pendergrass, 937 S.W.2d at 838. The question, as written, does not narrowly construe the issues and does not sufficiently identify the scope and limits of the alleged constitutional violations. The certified question in the instant case does not clearly state the reasoning that the Defendant employed during the suppression hearing, nor does the question state the reasoning the trial court employed in denying the Defendant's motion to suppress and was therefore not properly preserved. See, e.g., State v. Casey Treat, No. E2010-02330-CCA-R3-CD, 2011 WL 5620804, at *5 (Tenn. Crim. App., Nov. 18, 2011) (a certified question of law that did not "articulate the reasons previously relied upon by the Defendant in support of his argument [and did] not describe the trial court's holdings on the constitutional issues presented" was overly broad). The scope and limits of the legal issue reserved, the reasons relied upon by Defendant in the trial court at the suppression hearing, and the trial court's reasoning for denying the motion to suppress should be discernable from the certified question of law without the need to analyze any other portions of the appellate record, including hearing transcripts, exhibits, briefs, and pleadings. See State v. Jeffrey Van Garrett, No. E2018-02228-CCA-R3-CD, 2020 WL 1181805, at *3 (Tenn. Crim. App. Mar. 11, 2020). This court would

---

[1]We also note that there is apparently a factual dispute, or at the very least a factual discrepancy, regarding whether Sergeant Camargo asked the Defendant to pull around the parking lot during his first contact with the Defendant and before speaking to Lieutenant Gray, or during an interaction occurring before speaking with Lieutenant Gray but before the Defendant pulled around the parking lot. Though it seemed undisputed at the suppression hearing that Sergeant Camargo asked the Defendant to pull around during his initial, very brief interaction with the Defendant, which the Defendant already conceded was valid, the Defendant seems to assert on appeal that the "seizure" of the Defendant occurred when Sergeant Camargo asked the Defendant to pull around, subsequent to his initial encounter with the Defendant. Such discrepancy is also not encompassed in the certified question, further supporting our conclusion that the question is not dispositive.

have to "comb the record" to discern such information.  <u>Id.</u>  To answer the certified question as written, this court would be required to conduct a thorough analysis of fourth amendment search and seizure law and a comprehensive review of the suppression hearing, which we decline to do.  We also note that the overly-broad nature of the certified question is not cured by the Defendant's "substantially narrower statement of the issue on appeal."  <u>See</u> <u>State v. Jeffery Keith Toone, Jr.</u>, No. W2015-02332-CCA-R3-CD, 2017 WL 1032744, at *5 (Tenn. Crim. App. Mar. 16, 2017).  Because the certified question is not dispositive of the case and is overly broad, we are without jurisdiction to address the appeal.

## <u>CONCLUSION</u>

Because the certified question of law is not dispositive of the case and did not identify the scope and limits of the issue reserved, we are without jurisdiction to consider the appeal.  Accordingly, the appeal is dismissed.

_____
CAMILLE R. MCMULLEN, JUDGE